# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., and FLFMC, LLC ) ) ) Plaintiffs, ) v. ) ) ACE HARDWARE CORPORATION ) ) Defendant. ) ) | No. 10-cv-00229 (AJS)<br><br>Hon. Arthur J. Schwab<br><br><br><br>DOCUMENT FILED ELECTRONICALLY |

## ACE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404

The defendant, Ace Hardware Corporation ("Ace"), respectfully moves the Court, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the Northern District of Illinois, where an action addressing identical questions of law and fact is pending. For the reasons set forth below, this Motion should be granted.

## INTRODUCTION

Ace has been accused of violating the false patent marking statute, 35 U.S.C. § 292(a), by marking certain of its products with expired patent numbers. The interests of justice, however, require this case to be transferred to the Northern District of Illinois. In the first place, there is no relevant connection to this district other than the sole convenience of Plaintiff's *counsel*. FLFMC, LLC ("FLFMC") itself appears to have been formed solely for the purpose of bringing this and other similar lawsuits and as a *qui tam* relator is not expected to have any discovery or testimonial burden. FLFMC is not expected to produce any documents, answer any interrogatories, give any depositions, or to testify at trial.

As a consequence, *all* of the party-related information, documents and witnesses will be at Ace's headquarters in Oak Brook, Illinois, which is in the Northern District of Illinois. Furthermore, Ace obtains the accused products through a private labeling agreement with Newell Rubbermaid, Inc. ("Newell") through Newell's Shur-Line business unit. Newell is the entity that actually "marks" the accused products with the expired patent number, not Ace. Accordingly, Newell will provide critical third-party information, documents and witnesses. Newell is not located in this district either.

Importantly, however, Newell has been sued in the Northern District of Illinois under the *same* false patent marking statute, for marking the *same* products with the *same* expired patent numbers. Accordingly, the Illinois court will address the virtually the exact *same* issues of law and fact. If this case is allowed to proceed, Newell runs the serious risk of inconsistent adjudications on the merits as well as a risk of double-counting the Ace-branded products as Newell products for damages purposes. Practical, jurisprudential considerations require transfer so the cases may be consolidated.[1]

## BACKGROUND

**The False Patent Marking Statute**

The false patent marking statute states in pertinent part:

> . . . Whoever **marks upon, or affixes to, or uses in advertising** in connection with any unpatented article the word "patent" or any word or number importing the same is patented, for the purpose of deceiving the public . . . Shall be fined not more than $500 for every such offense.

---

[1] Simultaneously with its Motion to Transfer, Ace is also filing a motion to dismiss pursuant to Rules 12(b)(1) and 12 (b)(6) of the Federal Rules of Civil Procedure.

35 U.S.C. § 292(a) (emphasis added).  It is not enough under this statute to sell, or offer for sale, products that have been mismarked with a patent number.  The offense is to "mark[ ] upon," "affix[ ] to" or "use[ ] in advertising" anything "importing" that the product is patented.

**The Plaintiff, FLFMC, LLC**

FLFMC itself appears to have been formed solely for the purpose of bringing this and other similar lawsuits.  FLFMC registered with the state on January 29, 2010—*less than a month* before filing this action.  (*See* Pennsylvania Secretary of State Website, attached as **Exhibit 3**.)  It seems clear that FLFMC's only purpose is to serve as a shell plaintiff for the filing of false marking lawsuits.  *See, e.g.*, U.S. ex rel. FLFMC, LLC v. Wham-O, Inc., No. 2:10-cv-00435 (W.D. Pa. filed Apr. 1, 2010); U.S. ex rel. FLFMC, LLC v. T.F.H. Pubs., Inc., No. 2:10-cv-00437 (W.D. Pa. filed Apr. 1, 2010); U.S. ex rel. FLFMC, LLC v. William Bounds, Ltd., No. 2:10-cv-00420 (W.D. Pa. filed Mar. 29, 2010); U.S. ex rel. FLFMC, LLC v. Ohio Art Co., No. 2:10-cv-00230 (W.D. Pa. filed Feb. 17, 2010); U.S. ex rel. FLFMC, LLC v. Ebsco Indus., Inc., No. 2:10-cv-00231 (W.D. Pa. filed Feb. 17, 2010).

**Ace's Private Labeling Program With Newell**

Ace is being accused of falsely marking Ace-branded Trimline Edgers with U.S. patent No. 2,810,148 ("the '148 patent").  These accused products, while sold in Ace-affiliated stores, are not manufactured or packaged by Ace.  (Declaration of Kenneth A. Koranda ("Koranda Decl."), ¶ 3, attached hereto as **Exhibit 1**; Declaration of Paul Hemingfield ("Hemingfield Decl."), ¶ 4, attached hereto as **Exhibit 2**.)  Instead, Ace has entered into a private labeling program with Newell to package certain Shur-Line manufactured products under Ace's brand.  (Koranda Decl. ¶ 3, Hemingfield Decl. ¶ 4.)

Pursuant to that program, Newell, not Ace, has the accused products manufactured, packages them with an Ace private brand (instead of the Shur-Line brand), and

distributes the Ace-branded products to Ace's distribution centers. (Koranda Decl. ¶ 4, Hemingfield Decl. ¶ 5.) From the distribution centers, the products are sold to the various Ace-affiliated hardware stores. (Koranda Decl. ¶ 4, Hemingfield Decl. ¶ 5.)

Newell designs the Ace-branded product packaging, including marking the packaging with the '148 patent. (Koranda Decl. ¶ 5, Hemingfield Decl. ¶ 6.) Ace reviews the packaging for its own purposes, but because Ace was never the owner or a licensee of the '148 patent, Ace has no interest in whether the packaging is marked with patent information or not. (Koranda Decl. ¶ 5, Hemingfield Decl. ¶ 6.) Accordingly, Ace does not require the packaging to be marked with the '148 patent number and Newell does not add the mark as an Ace requirement or request. (Koranda Decl. ¶ 5, Hemingfield Decl. ¶ 6.)

The packaging for the Ace-branded Trimline Edger accused in this lawsuit was marked with the '148 patent number by Newell. (Koranda Decl. ¶ 6, Hemingfield Decl. ¶ 7.)

**DISCUSSION**

Under 28 U.S.C. § 1404(a), the Court should transfer this case "to any other district or division where it might have been brought" when transfer serves "the convenience of parties and witnesses" and is "in the interest of justice." *Id.* This Court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The Third Circuit has provided a non-exhaustive list of the public and private factors relevant to the Court's calculus.[2] Where, as here, virtually every relevant factor supports transfer, the Court should exercise its discretion to transfer this case. Here, the factors to be analyzed clearly favor transfer.

---

[2] As a motion for transfer does not involve substantive issues of patent law, the Court should apply the law of the Third Circuit. *See In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

## I. THERE ARE NO RELEVANT CONTACTS WITH THE WESTERN DISTRICT OF PENNSYLVANIA

As an initial matter, there are no relevant contacts with this district. While a plaintiff's choice of forum may ordinarily be given some deference, here it deserves none.

FLFMC itself appears to have been formed solely for the purpose of bringing this and other similar lawsuits. FLFMC registered with the state on January 29, 2010—*less than a month* before filing this action. It seems clear that FLFMC's only purpose is to serve as a shell plaintiff for the filing of false marking lawsuits. *See, e.g.*, U.S. ex rel. FLFMC, LLC v. Wham-O, Inc., No. 2:10-cv-00435 (W.D. Pa. filed Apr. 1, 2010); U.S. ex rel. FLFMC, LLC v. T.F.H. Pubs., Inc., No. 2:10-cv-00437 (W.D. Pa. filed Apr. 1, 2010); U.S. ex rel. FLFMC, LLC v. William Bounds, Ltd., No. 2:10-cv-00420 (W.D. Pa. filed Mar. 29, 2010); U.S. ex rel. FLFMC, LLC v. Ohio Art Co., No. 2:10-cv-00230 (W.D. Pa. filed Feb. 17, 2010); U.S. ex rel. FLFMC, LLC v. Ebsco Indus., Inc., No. 2:10-cv-00231 (W.D. Pa. filed Feb. 17, 2010).

Furthermore, as a *qui tam* relator, FLFMC is not expected to have any discovery or testimonial burden whatsoever. FLFMC will not produce documents, answer interrogatories, give depositions, or testify at trial. None of the issues ordinarily suggesting some deference are present here. Indeed, the sole reason for filing in the Western District of Pennsylvania is for the convenience of plaintiff's *counsel*. Of course, the convenience of counsel is to be given no deference whatsoever. *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("the convenience of counsel is not a factor to be considered" in deciding a motion to transfer).

Ace is affiliated with all Ace hardware stores, including those in Pennsylvania, through a retailer-owned cooperative arrangement. (Koranda Decl. ¶ 12.) Ace has no distribution center, company-owned Ace stores or any other owned or leased real property in

Pennsylvania.  (*Id.*)  Other than the fact that Ace sells the accused Ace-branded product to its affiliated stores in Pennsylvania for re-sale to consumers, Ace has no management office or presence in Pennsylvania.  (*Id.*)  While there is no good reason for keeping this case here, many reasons compel its transfer to the Northern District of Illinois.

## II.  THE NORTHERN DISTRICT OF ILLINOIS IS A PROPER FORUM IN WHICH THIS ACTION COULD HAVE BEEN BROUGHT

There is no doubt that this action could have been brought in the district in which the defendant Ace resides.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (court first must determine whether the plaintiff could have brought the case in the district to which transfer is sought).  Because the action is one for false patent marking under 35 U.S.C. § 292(a), the general venue provisions of 28 U.S.C. § 1391 and § 1395 apply.[3]

## III.  PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER TO ILLINOIS

Relevant "private interest" factors include (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses (to the extent that they are unavailable in one forum); and (6) the location of books and records (to the extent that they cannot be produced in one forum).  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

### A.  The Plaintiff's Forum Preference On Behalf Of The United States Of America Does Not Disfavor Transfer

As set forth above, the plaintiff's choice of forum in this district is entitled to no deference whatsoever.  In addition, it should be noted that the real plaintiff—not just a relator—is the United States.  The United States has no vested interest in any particular district.  The

---

[3] Although the case arises under the patent laws for purposes of jurisdiction under 28 U.S.C. § 1338(a), the propriety of venue is not determined by 28 U.S.C. § 1400(b), as the action is not one for patent infringement.

United States, moreover, also has no discovery or testimonial burden in prosecuting this case. Once again, this district is simply plaintiff's counsel's preferred venue. Even if counsel's choice were given some deference, that consideration nevertheless would be significantly outweighed by the other factors which clearly favor transfer.

B.  **The Defendant's Forum Preference Strongly Favors Transfer**

This is not merely a situation in which a defendant seeks to shift the inconvenience it would otherwise bear to the plaintiff. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 n.3 (3d. Cir. 1973). As set forth herein, virtually every relevant factor favors transfer to the Northern District of Illinois.

C.  **Where The Claim Arose Strongly Favors Transfer**

The third private interest factor, "where the claim arose," strongly supports Ace's requested transfer. The plaintiff's purported claim simply did not arise in the Western District of Pennsylvania in any meaningful sense. Even if the accused products at issue may have been in this district, they were sold throughout the United States and, in any event, were not "marked" in this district. *See Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 632 (W.D. Pa. 2006) (quoting *Saint-Gobain Calmar Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002)) (noting that, in a patent infringement context, "[a]ppropriate considerations include the location of a product[']s development, testing, research and production [and] the place where marketing and sales decisions were made, rather than where limited sales activity has occurred"); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("The Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market.") (citation omitted).

Ace's private labeling program, and its product line management are located at its headquarters in Illinois. (Koranda Decl. ¶ 8.) Illinois, then, is where Ace decided to acquire the accused products through a private labeling program with Newell. (*Id.* ¶ 9.) As courts in this circuit have recognized, transfer is appropriate where, as here, "this lawsuit is based on decisions that were made in Illinois by defendants who reside in Illinois." *Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467, 470 (E.D. Pa. 1999). Accordingly, the third private interest factor weighs in favor of transferring the case.

D.  **The Convenience Of The Parties Strongly Favors Transfer**

As set forth above, the *only* party to whom convenience is even an issue is defendant Ace—the only party likely to respond to discovery, produce documents, provide depositions, and the only party whose personnel will testify at trial. Accordingly, the fourth private interest factor, the relative convenience of the parties, also weighs in favor of transfer. This is not merely a situation in which a defendant seeks to shift the inconvenience it would otherwise bear to the plaintiff. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 n.3 (3d. Cir. 1973). Here, *all* of the party information, documents, and witnesses are located in Illinois.

Ace's corporate headquarters and its principal place of business are located in Oak Brook, Illinois. (Koranda Decl. ¶ 7.) Similarly, Ace's private labeling program and its product lines are managed at its headquarters in Oak Brook. (*Id.* ¶ 8.) Ace's relevant decision makers and product managers are similarly located in Oak Brook. (*Id.*) Specifically, the person in charge of Ace's overall private labeling program, Brand Manager **Tracey M. Gidich-Zupke**, works in Ace's Oak Brook headquarters. Similarly, the Ace buyer who is responsible for the Ace-branded Trimline Edger, among other products, is **Thomas G. Woods**, who also works at the Oak Brook location.

Ace's sales and marketing functions are managed in the Oak Brook headquarters location.  (*Id.* ¶ 10.)  Mr. **Woods** is competent to testify about Ace's purchases of the accused products from Newell and the sale of those products to Ace-affiliated stores.  (*Id.*)  Ace's Oak Brook headquarters is the location at which Ace decided to acquire the accused product through a private labeling program with Newell.  (*Id.* ¶ 9.)

Similarly, *all* of Ace's documents and electronically stored information associated with the accused products, Ace's decision to enter a private labeling program, and the sales and profit information are located in Oak Brook.  (*Id.* ¶ 11.)

Significantly, much of the documents, information and witnesses about the actual marking of the accused products, the decision to mark, the private labeling program, and the decision to mark privately labeled products with patent numbers all reside with Newell, a non-party to this case, not Ace. (Hemingfield Decl. ¶ 11.)

Newell's Shur-Line unit is located in Huntersville, North Carolina.  (Hemingfield Decl. ¶ 8.)  Further, Newell's private labeling program (which includes Shur-Line products for Ace) and certain hardware product lines are managed at the Huntersville, North Carolina, location.  (*Id.* ¶ 9.)  Newell's relevant decision makers and product managers are similarly located in North Carolina and Wisconsin. (*Id.*)  Specifically, **Sarah Dulski**, Newell's Product Marketing Team Leader with responsibility for the Shur-Line products, including those products' marketing, packaging, and private labeling, works at the Huntersville location.  (*Id.*)

Other relevant witnesses, although not located in Huntersville, are also not located in western Pennsylvania.  (*Id.* ¶ 10.)  Newell's Sales Leader, **Craig Evans**, who has responsibility for the Ace account, lives and works from his home in Pleasant Prairie, Wisconsin.  (*Id.*)  Furthermore, **Liz Ludwig**, Newell's Channel Manager for products including Shur-Line

products, works out of a manufacturing location in St. Francis, Wisconsin. (*Id.*) Ms. **Ludwig** is competent to testify about Newell's sales of the accused products to Ace, as well as Ace's participation in the private labeling program with Newell. (*Id.*) **Craig Serio**, Newell's lead engineer for the Shur-Line products, is also located in St. Francis. (*Id.*) Mr. **Evans**, Ms. **Ludwig** and Mr. **Serio** all reside within the 100-mile subpoena power of the Northern District of Illinois. (*Id.*)

Similarly, virtually all of Newell's documents and electronically stored information associated with the accused products, Ace's decision to enter a private labeling program, and the sales and profit information are located in Huntersville. (*Id.*) Ordinarily Newell would appear to be inconvenienced regardless of the forum, making this factor initially appear neutral. Here, however, Newell has already been haled into court in the Northern District of Illinois. Accordingly, Newell, too, would be much less inconvenienced by a transfer to that district. (*Id.*)

### E. The Convenience Of The Witnesses And The Location Of Books And Records Also Strongly Favor Transfer

The last two private interest factors—the convenience of witnesses, and the location of books and records—counsel in favor of transferring the action. As already discussed, there appear to be *no* documents, information or witnesses in this district. *All* of the party documents, information and witnesses are in the Northern District of Illinois. Further, *all* of non-party Newell's documents, information and witnesses will be used in the Northern District of Illinois because Newell is a party to a virtually identical lawsuit there.

### IV. PUBLIC INTEREST FACTORS ALSO STRONGLY FAVOR TRANSFER

The company that actually manufactured and packaged the accused products and *actually marked them with a patent number*—Newell—has been sued for violating the false

patent marking statute in the Northern District of Illinois. Accordingly, the public interest factors likewise strongly support Ace's motion to transfer. The public interests that the Court may consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in deciding local controversies; (5) any public policies of the fora; and (6) the trial judge's familiarity with applicable state law, if any. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

### A. The Enforceability Of The Judgment Does Not Disfavor Transfer

Ace is not aware of any enforceability issue in either district. Accordingly, this factor does not weigh against transfer.

### B. Practical Considerations That Could Make The Trial Easier, Quicker, Or Less Expensive Strongly Favors Transfer

Importantly, the case *Simonian v. Irwin Industrial Tool Co.*, No. 10-cv-01260 (N.D. Ill. filed Feb. 24, 2010), now-pending in the Northern District of Illinois, is virtually identical to this case and involves virtually all the *same* questions of law and fact.[4] (Hemingfield Decl. ¶ 12.) In *Simonian*, Newell has been sued under the false patent marking statute for allegedly marking its Shur-Line brand of painting tools with an expired patent number. (*Id.* ¶ 13.) These are the *same* tools that Newell provides to Ace under its private labeling program and allegedly marked with the *same* expired patent. (*Id.* ¶ 13.) Not only might different courts reach different conclusions on the same questions of fact and law, but the Illinois court may include Newell's privately labeled products in its fine calculations. Without a transfer, Newell

---

[4] Irwin Industrial Tool Company ("Irwin") is a wholly owned subsidiary of Newell and is part of Newell's Hardware Group. (Hemingfield Decl. ¶ 12.) The plaintiff in that case has incorrectly identified Shur-Line as an operating division of Irwin, when it is actually a division of Newell Operating Company. (*Id.*)

runs the serious risk of inconsistent adjudications on the merits as well as a risk of double-counting the Ace-branded products as Newell products for damages purposes.

The pendency of such a closely related case weighs heavily in favor of transfer. *See Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960) (affirming transfer under § 1404(a) even where the named defendants were technically different, since the "crucial issues" were identical, the witnesses were identical, and "the substance of what had to be done to adjudicate the rights of the parties was not different at all"); *Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc.*, No. 04-cv-1444, 2004 WL 2755585, at *8 (E.D. Pa. Dec. 1, 2004) (quoting *Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, No. 03-3185, 2003 WL 22358439, at *5 (E.D. Pa. Sept. 10, 2003)) ("The interests of justice and the convenience of the parties and witnesses are ill-served when federal cases arising out of the same circumstances and dealing with the same issues are allowed to proceed separately.").

Moreover, if Ace's request for transfer is granted, Ace will move to consolidate the two cases. Consolidation of these two actions will eliminate any risk of inconsistent judgments—yet another public interest factor weighing in favor of transfer. *See Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, No. 09-1036, 2010 WL 170403, at *3 (W.D. Pa. Jan. 14, 2010) ("Courts generally find that ongoing related litigation in the proposed transferee forum is a significant factor in favor of transfer."); *SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, No. 99-cv-2926, 2000 WL 217642, at *1 (E.D. Pa. Feb. 11, 2000) ("Relevant factors of public interest include the avoidance of the potential for inconsistent judgments and the promotion of judicial economy.").

In addition, the action in the Northern District of Illinois was filed just one week after this case. Irwin Industrial Tool Company has yet to even answer the complaint. No

discovery has taken place, and there is no risk that the plaintiff will be prejudiced by transfer of this action to the Northern District of Illinois.

The practical, jurisprudential considerations encompassed by this factor virtually mandate transfer so these almost-identical cases may be consolidated.

### C. Court Congestion Does Not Disfavor Transfer

Although court congestion is a public interest factor to be considered, it does not weigh in favor of keeping the case in the Western District of Pennsylvania. In the Northern District of Illinois, the median time from filing to disposition in a civil case is just 6.2 months, and the median time to trial in a civil case is 27.8 months—slightly less in both instances than in the Western District of Pennsylvania. (*See* Judicial Caseload Profiles for the 12-month period ending September 30, 2009, attached as **Exhibit 4**.) Therefore, transfer of this action will not create a significant burden on the Northern District of Illinois or create an unnecessary delay for the parties.

### D. Local Interest In Deciding Local Controversies Favors Transfer

Ace's headquarters and principal place of operation is in Illinois and in the Northern District of Illinois. There is simply no local interest that would justify burdening the people and the Court in *this* District with this case. There is no connection of the parties or their interests to this jurisdiction. This case does not involve Pennsylvania citizens and no damages have been suffered here. The citizens of Pennsylvania have no interest in deciding this case, and if anything, would benefit from this case being tried elsewhere. Illinois, on the other hand, has a local interest in the conduct and operations of one of its resident corporate citizens and employers.

E.  **Any Public Policies Of The Fora Do Not Disfavor Transfer**

Ace is unaware of any public policies of either district that would affect the transfer analysis. Accordingly, this factor does not disfavor transfer.

F.  **The Trial Judge's Familiarity With Applicable State Law Does Not Disfavor Transfer**

This case is based on federal law and there are no pendant state law claims. Accordingly, this factor does not disfavor transfer.

## CONCLUSION

For these reasons, defendant Ace Hardware Corporation respectfully requests that this case be transferred, pursuant to 28 U.S.C. § 1404(a), to the Northern District of Illinois, where an action raising the same issues of fact and law is already pending.

Dated: April 16, 2010

Respectfully submitted,

/s/ Matthew T. Logue
Matthew T. Logue
Arthur H. Stroyd
DEL SOLE CAVANAUGH STROYD LLC
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110

John A. Bannon (jbannon@schiffhardin.com)
Jessica K. Fender (jfender@schiffhardin.com)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
Tel: 312-258-5500
Fax: 312-258-5600

*Counsel for Defendant*
Ace Hardware Corporation